UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAMIEN BLAINE SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01838-SEB-TAB |
| | ) | |
| A. SHAW, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Damien Blaine Sanders, an inmate at Pendleton Correctional Facility, alleges in this civil rights action that Defendant A. Shaw, a correctional officer, used excessive force against him by spraying him with a fire hose. Defendant has moved for summary judgment. Dkt. [35]. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

On January 22, 2021, Mr. Sanders was housed in H Cell House and Defendant Shaw was a correctional officer. Sanders Deposition, dkt. 36-2 at 12; Shaw Affidavit, dkt. 36-1 at 1. Inmates in the cell house were starting fires, yelling, and throwing things from their cells. Dkt. 36-1 at 1; dkt. 36-2 at 18-19. Defendant Shaw used a fire hose to try to suppress the fires. Dkt. 36-1 at 1. The parties dispute whether the fire hose sprayed as forcefully as a regular fire hose. *Id*. at 1; Sanders' Response Brief, dkt. 64 at 3. Defendant Shaw was concerned that inmates close to their cell doors would attempt to harm him with shanks or by throwing boiling water or objects at him. *Id*. at 2.

Prison officials had shut off the electricity in the unit because inmates were using the electrical outlets to start fires. *Id*. When Defendant Shaw approached Mr. Sanders' cell with a fire hose, Mr. Sanders blocked Defendant Shaw from proceeding down the range by sticking his arm and a small tote box through his cuff port and into the walkway. Dkt. 36-2 at 23-25. Mr. Sanders

then asked to have his power turned back on so he could use a fan to disperse the smoke in his cell and relieve his asthma. *Id*. at 16-17, 25-26. Defendant Shaw told Mr. Sanders to get out of the way, but Mr. Sanders was desperate for help, so he did not follow the order. *Id*. at 26-27. Defendant Shaw repeated the order 3 or 4 times, and Mr. Sanders kept yelling that he could not breathe and needed power. *Id*. When Mr. Sanders failed to move, Defendant Shaw turned on the fire hose and sprayed Mr. Sanders. *Id*. at 27.

The parties dispute the length of time Defendant Shaw sprayed Mr. Sanders. Defendant Shaw attests that it was for 2-to-3 seconds, dkt. 36-1 at 2. Mr. Sanders attests that it was closer to 10-to-15 seconds but acknowledges "[i]t might not have been that long." Dkt. 36-2 at 28. Mr. Sanders had been on his knees, and the pressure from the hose caused him to fall backwards away from his cell door. *Id*. at 29. Defendant Shaw then left the range. *Id*. at 28. Mr. Sanders was left in his cell for three or four days. *Id*. at 29. His face and chest were sore and felt bruised for days. *Id*. at 38. It hurt to take deep breaths. *Id*. at 39. He requested medical attention but did not receive any. *Id*. at 40. He does not have any ongoing injuries from the incident. *Id*.

## III.
## Discussion

### A. Excessive Force Claim

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-

3

faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

Here, no reasonable juror could conclude that Defendant Shaw's use of force was malicious or excessive. He was attempting to fight fires and Mr. Sanders was actively blocking his way. When Defendant Shaw repeatedly ordered Mr. Sanders to move out of the way, Mr. Sanders refused. Although Mr. Sanders was not aggressive or violent, he was interfering with Defendant Shaw's ability to put out the fires that were causing Mr. Sanders' cell to fill with smoke. The indirect threat to staff and inmates caused by delaying the firefighting was great. Defendant Shaw attempted to temper the severity of the force by repeatedly giving Mr. Sanders an opportunity to move out of the way and avoid the need for force altogether.

Available video evidence is not conclusive, but it appears that Defendant Shaw deployed the hose for approximately five seconds, although it is not clear from the video how much of the spray entered Mr. Sanders' cell. Mr. Sanders' injuries were relatively minor—several days of soreness. In short, all of the *Whitley* factors weigh in favor of Defendant Shaw. Thus, he is entitled to summary judgment on Mr. Sanders' excessive force claim.

### B. Deliberate Indifference Claim

Mr. Sanders claims that Defendant Shaw acted with deliberate indifference to the injuries caused by spraying Mr. Sanders with a fire hose. The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that the pain and soreness Mr. Sanders experienced was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Defendant Shaw acted with deliberate indifference—that is, that he "consciously disregarded a serious risk to [Mr. Sander's] health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Mr. Sanders "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Defendant Shaw attests that he had no further interactions with Mr. Sanders after spraying him with the hose, so Defendant Shaw was not aware of Mr. Sanders' need for medical attention.

5

Dkt. 36-1 at 3; dkt. 36-2 at 28 ("[H]e turned it on, hit me with the full blast of the fire hose, knocking me back, and then he left. He turned it off and left.").

Mr. Sanders does not dispute that he did not ask for medical assistance for his injuries from the fire hose. Dkt. 64 at 4; dkt. 36-2 at 35 (Q: "[A]fter you were sprayed, you made no request for medical assistance to Sergeant Shaw or the fire team?" A: "No."). Instead, he contends that he repeatedly asked Defendant Shaw for help beforehand because the smoke was making it difficult for him to breathe. Dkt. 64 at 4. But Mr. Sanders' complaint only alleged that he was denied medical treatment for the physical injuries caused by the excessive force, not for smoke inhalation. Dkt. 1 at 2-3. And even if deliberate indifference to his smoke inhalation were part of his claim, Defendant Shaw would be entitled to summary judgment because he was in the midst of fighting the fires that were causing the smoke when Mr. Sanders impeded his progress. After the incident, Defendant Shaw had left the range, but he understood that inmates who needed medical assistance were taken to the medical unit by other correctional staff. Dkt. 36-1 at 2. Mr. Sanders has not presented evidence that any injuries he sustained due to smoke inhalation were so severe that they required Defendant Shaw to stop fighting fires and ensure that he received treatment. Under these circumstances, no reasonable juror could conclude that Defendant Shaw consciously disregarded a substantial risk of harm to Mr. Sanders. Defendant Shaw is entitled to summary judgment on this claim.[1]

---

[1] Mr. Sanders' response also argues that Defendant Shaw retaliated against him by filing a false conduct report and continues to harass him. But the Court dismissed any retaliation claim at screening because Mr. Sanders had not alleged any First Amendment activity on his part. Dkt. 8 at 3. If Mr. Sanders wishes to challenge any ongoing constitutional violation, he may do so by initiating a new civil rights action after exhausting available administrative remedies.

## IV.
## Conclusion

Defendant Shaw's motion for summary judgment, dkt. [35], is **GRANTED**. Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 8/30/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DAMIEN BLAINE SANDERS
116096
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

William Dean Young
Lewis And Wilkins LLP
young@lewisandwilkins.com